IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LYNDY M. SLAUGHTER,** | 6:14-CV-01778-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **CAROLYN W. COLVIN,**<br>**Commissioner, Social Security**<br>**Administration,** | |
| Defendant. | |

**BRENT WELLS**
Harder Wells Baron & Manning, PC
474 Willamette Street
Suite 200
Eugene, OR 97401
(541) 686-1969

**JAMES W. MOLLER**
8655 S.W. Citizens Drive
Suite 104
Willsonville, OR 97070
(971) 224-4195

       Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**SARAH L. MARTIN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-3705

    Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Lyndy M. Slaughter seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

This matter is now before the Court on Plaintiff's Complaint in which she seeks review of the Commissioner's decision and the Commissioner's Motion to Remand (#14) for further administrative proceedings on the ground that the Administrative Law Judge (ALJ) erred at Step Five.

Following a review of the record, the Court **REVERSES** the Commissioner's decision, **DENIES** the Commissioner's Motion to

Remand for further administrative proceedings, and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for DIB on October 6, 2010, and her application for SSI on March 9, 2011. Tr. 7, 92.[1] Plaintiff alleged a disability onset date of June 3, 2007. Her applications were denied initially and on reconsideration. An ALJ held a hearing on April 12, 2013. Tr. 35. At the hearing Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney.

On May 16, 2013, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 10-28. On September 3, 2014, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-4. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on August 24, 1980. Tr. 76. Plaintiff was 32 years old at the time of the hearing. Plaintiff went to

---

[1] Citations to the official transcript of record filed by the Commissioner on June 22, 2015, are referred to as "Tr."

3 - OPINION AND ORDER

school through the eleventh grade. Tr. 928. Plaintiff has past relevant work experience as a caregiver and nurse's aid. Tr. 20.

Plaintiff alleges disability due to attention-deficit disorder (ADD), anxiety disorder, borderline personality disorder, major depression, posttraumatic stress disorder (PTSD), panic disorder, and lumbar degenerative disc disease. Tr. 12.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 15-19.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

4 - OPINION AND ORDER

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

5 - OPINION AND ORDER

**DISABILITY ANALYSIS**

I. **The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

6 - OPINION AND ORDER

regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in substantial gainful activity since her June 3, 2007, alleged onset date. Tr. 12.

At Step Two the ALJ found Plaintiff has the severe impairments of attention-deficit disorder (ADD), anxiety disorder, borderline personality disorder, major depression, posttraumatic stress disorder (PTSD), panic disorder, lumbar degenerative disc disease, a history of endometriosis, and a history of alcohol and substance abuse. Tr. 12. The ALJ found Plaintiff's bursitis, degenerative disc disease of the cervical spine, carpal-tunnel syndrome, and stroke to be "non-medically determinable impairment[s]." Tr. 13.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 13. The ALJ found Plaintiff has the RFC to perform "medium less than a full range of work." Tr. 14. The ALJ found Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb. Tr. 14. The ALJ also found Plaintiff can "perform simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the

general public." Tr. 14.

At Step Four the ALJ concluded Plaintiff could not perform her past relevant work. Tr. 20.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 21. Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected the opinion of examining psychologist Ryan Scott, Ph.D.,[2] and (2) found at Step Five that Plaintiff could do other jobs that exist in the national economy.

In her Motion to Remand the Commissioner concedes the ALJ erred at Step Five when he found Plaintiff is limited to work involving simple one- or two-step work instructions but concluded, nevertheless, Plaintiff could perform work that exists in the national economy that requires Reasoning Level 2. The Commissioner moves the Court to remand this matter for further proceedings on that issue.

---

[2] In his Opening Brief under "Statement of the Issues" Plaintiff also contends the ALJ erred when he failed to address the medical opinion of David Truhn, Psy. D., evaluating psychologist. Although Plaintiff failed to address this issue in his Opening Brief, she presented argument on this issue in her Reply.

9 - OPINION AND ORDER

## I. The ALJ erred when he rejected Dr. Scott's opinion and failed to address Dr. Truhn's opinion.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32.

### A. Dr. Scott

On April 1, 2013, Dr. Scott conducted a comprehensive psychological evaluation of Plaintiff. Dr. Scott noted "there were some validity concerns in regards to [Plaintiff's MMPI] evaluation," but Plaintiff's possible "over reporting" may indicate "significant or multiple medical conditions." Tr. 929. Dr. Scott also noted Plaintiff's responses to the Personality Assessment Inventory (PAI) "suggested that she may have endorsed items that presented an unfavorable impression though this was still a valid administration." Tr. 930. Dr. Scott found Plaintiff's "general cognitive ability is within the average range," and her ability "to sustain attention, concentrate, and exert mental control is in the average range." Tr. 931, 932.

10- OPINION AND ORDER

Dr. Scott, however, also noted Plaintiff "appear[s] to have substantial mental health issues" including a major depressive disorder, PTSD, a panic disorder, and a borderline personality disorder. Tr. 932-33. Dr. Scott opined Plaintiff

> would likely have marked impairment in social interaction, particularly the ability to interact appropriately with the general public, respond to criticism appropriately from supervisors and get along with coworkers or peers without distracting them with behavioral extremes. She also would have marked difficulties in working in coordination with others or in proximity with others without being distracted by them and it would also likely interfere with her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Her mental health issues also would likely cause marked impairment in understanding and remembering detailed instructions and the ability to carry out these detailed Instructions. She would also likely have moderate limitations in remembering work-like procedures and remembering short and simple instructions as wall as carrying out these short and simple instructions. She would also have moderate impairment in performing activities within a schedule. She noted that she has significant difficulty in leaving the house to get to places and will avoid leaving the house. She would also likely have marked limitations in traveling to unfamiliar places or using public transportation.

Tr. 933.

The ALJ rejected Dr. Scott's opinion on the grounds that Dr. Scott expressed possible concerns about the validity of the MMPI, Dr. Scott only met with Plaintiff one time, and Plaintiff's activities of daily living "do not support the degree of limitation suggested in Dr. Scott's report." Tr. 20.

11- OPINION AND ORDER

The record, however, reflects although Dr. Scott expressed "validity concerns" related to Plaintiff's MMPI, he also noted responses such as those given by Plaintiff "may occur in individuals with genuine severe psychological difficulties." Tr. 929. As noted, Dr. Scott indicated Plaintiff's responses to the PAI "suggested that she may have endorsed items that presented an unfavorable impression," but Dr. Scott also concluded it was "still a valid administration" of that test.

In addition, the record reflects Dr. Scott's opinion is not contradicted by any other treating or examining medical source. In fact, Dr. Scott's opinion appears to be endorsed by Plaintiff's other examining medical professionals. For example, after conducting a Comprehensive Psychological Evaluation of Plaintiff in February 2010, Robert Basham, Pd.D., opined Plaintiff suffered from PTSD, a panic disorder, and a borderline personality disorder. He assessed Plaintiff with a GAF of 45.[3] Dr. Basham noted Plaintiff

---

[3] Although the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders V* (DSM V) issued May 27, 2013, abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability (*see* DSM-V 16 (5th ed. 2013)), at the time of Plaintiff's assessment and the ALJ's opinion the GAF scale was used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100 (*see Diagnostic and Statistical Manual of Mental Disorders IV* 31-34 (4th ed. 2000)). In the fourth edition, a GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job). *Id*.

> was having marked difficulties with basic
> emotional and psychological stability on the day
> of her evaluation.  She gave the impression that
> she has had similar problems for years, and she
> may have had them her whole life, given the
> instability of her childhood family environment
> . . . .  She is experiencing relatively serious
> psychological symptoms and must stabilize before
> she is ready to have the children returned.

Tr. 473.

Similarly, on March 15, 2013, Stephen Schepergerdes, M.D., Plaintiff's treating physician, opined Plaintiff would not be able to sustain "a simple routine, low stress sedentary job" because she cannot

> effectively deal with the public, or stress, or
> detailed instructions.  She could not take
> criticism well.  She [is] hypersensitive to pain
> in spite of medication use - the medication would
> further limit her ability to sustain alertness and
> attention to detail.  She would have excessive
> work absences.

Tr. 920.

In addition, on February 7, 2011, Dr. Truhn, examining psychologist, opined "[t]here is a strong probability that [Plaintiff] may consistently experience an unstable affect and interpersonal problems and present with numerous crisis situations."  Tr. 483.

On this record the Court concludes the ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for rejecting Dr. Scott's opinion.

13- OPINION AND ORDER

**B. Dr. Truhn**

On August 18, 2010, Dr. Truhn conducted a psychological examination of Plaintiff. Although this examination is referred to in the record, Dr. Truhn's report of that examination is not in the record. On February 7, 2011, Dr. Truhn submitted an Addendum to Evaluation to the Oregon Department of Human Services addressing whether there were any changes or additions to his August 2010 diagnosis of Plaintiff. In his February 2011 Addendum Dr. Truhn "dropped" the diagnosis of attention-deficit hyperactivity disorder (ADHD). Dr. Truhn opined Plaintiff suffers from a pain disorder and a borderline personality disorder. Tr. 483. Dr. Truhn noted "[t]here is a strong probability that [Plaintiff] may consistently experience an unstable affect and interpersonal problems and present with numerous crisis situations." Tr. 483. Finally, Dr. Truhn noted

> [s]upportive services from a day treatment program or an apartment program may be helpful in aligning her with a supportive therapist who is able to monitor her use of prescription medication, as well as monitor her suicidal thoughts and actions and to provide consistent therapeutic contact.

Tr. 484.

The ALJ did not mention or evaluate Dr. Truhn's February 2011 opinion, and the Court cannot conclude from this record that the ALJ's failure was harmless error. Dr. Truhn's opinion appears to support Dr. Scott's opinion that Plaintiff is unable to function in a competitive work situation consistently

14- OPINION AND ORDER

or in an ongoing manner.  In fact, Dr. Scott states in his
opinion that he reviewed Dr. Truhn's August 2010 report and
February 2011 Addendum when forming his opinion.

On this record the Court concludes the ALJ erred when
he failed to address Dr. Truhn's February 2011 opinion.

**II.  The ALJ erred at Step Five**.

At Step Five the ALJ found Plaintiff could perform other
work that exists in the national economy as an electronics
worker, bench assembler, or assembler of electronic accessories.
Pursuant to the Dictionary of Occupational Titles (DOT), all of
those jobs require Reasoning Level 2.  U.S. Dep't of Labor,
*Dictionary of Occupational Titles* App. C (4th ed. 1991).  The DOT
defines Reasoning Level 2 as the ability to "apply commonsense
understanding to carry out detailed but uninvolved written or
oral instructions.  Deal with problems involving a few concrete
variable in or from standardized situations."  *Id*.

The ALJ, however, found Plaintiff has the RFC to perform
only "simple, repetitive, routine tasks."  Tr. 14.  Plaintiff
asserts the ALJ's finding is consistent with jobs that only
require Reasoning Level 1, which is defined as the ability to
"[a]pply commonsense understanding to carry out simple one- or
two-step instructions.  Deal with standardized situations with
occasional or no variables in or from these situations
encountered on the job."  U.S. Dep't of Labor, *Dictionary of*

15- OPINION AND ORDER

*Occupational Titles* App. C (4th ed. 1991).  According to
Plaintiff, therefore, the ALJ erred when he found Plaintiff could
perform work as an electronics worker, bench assembler, or
assembler of electronic accessories.

Defendant concedes "the ALJ erred in articulating [as] a
basis for his finding" that Plaintiff is limited to simple,
repetitive routine tasks.  Although Defendant notes the ALJ
appears to have adopted the opinion of reviewing psychologist
Dorothy Anderson, Ph.D., who opined Plaintiff is able to remember
and to understand "short simple 1-2 step work instructions
but not more detailed" instructions, Defendant also notes
Dr. Anderson stated elsewhere in her opinion that Plaintiff could
carry out "short and simple instructions" and "make simple
decisions."  Tr. 134-35.  Dr. Anderson concluded in that same
opinion that Plaintiff was "limited to simple repetitive work
tasks."  Tr. 136.  According to Defendant, therefore,
clarification is needed as to whether Plaintiff is limited to
simple, routine tasks or to one- or two-step tasks.

Plaintiff asserts the ALJ also erred at Step Five when he
failed to ask the VE whether light-level jobs existed in the
national economy that required only occasional interaction with
supervisors.  In his assessment of Plaintiff's RFC the ALJ
specifically found Plaintiff was limited to jobs involving "no
more than occasional interaction with supervisors, co-workers,

16- OPINION AND ORDER

and the general public." Tr. 14. At the hearing the ALJ posed a hypothetical to the VE that included the limitation related to occasional interaction with supervisors, co-workers, and the general public, and he inquired whether any medium work existed that Plaintiff could perform. Tr. 67. The VE stated there were not any medium-level jobs that would be available to an individual with those limitations. The ALJ then asked the VE whether any light-level jobs existed that were consistent with the hypothetical. The VE responded: "Let me just double check at the light [level]. I believe that there's some light duty jobs that have limited, occasional contact with coworkers and the public." Tr. 68. The VE, however, did not refer to the limitations in the ALJ's hypothetical restricting Plaintiff to "no more than occasional interaction with supervisors." When the VE identified three light-level jobs, he reduced the number of those jobs existing in the national and regional economies by 25 percent to reflect the limitation of "limited public contact," but he did not make any mention of nor appear to take into consideration only occasional interaction with supervisors. Tr. 69. Thus, the record is not clear as to whether the VE addressed Plaintiff's limitation to only occasional interaction with co-workers.

On this record the Court concludes the ALJ erred at Step Five when he concluded Plaintiff could perform the three jobs

17- OPINION AND ORDER

identified by the VE.

**III. This matter is remanded for the immediate calculation and award of benefits.**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

18- OPINION AND ORDER

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when he improperly rejected the opinion of Dr. Scott and failed to address Dr. Truhn's opinion. Those opinions are not contradicted by the opinions of other treating or examining physicians, and the record has been fully developed.

After giving the opinions of Drs. Scott and Truhn the weight required by law, the Court concludes Plaintiff cannot work on a regular and continuing basis and, therefore, is disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b)(RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). The Court, therefore, concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick*, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record

that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Accordingly, the Court remands this matter for the immediate calculation and award of benefits to Plaintiff.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner, **DENIES** the Commissioner's Motion (#14) to Remand for further administrative proceedings, and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 22nd day of February, 2016.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge